J-A20029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TYRONE CHARLES BRANTLEY :
:
Appellant : No. 730 WDA 2017

Appeal from the Judgment of Sentence April 18, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013724-2015

BEFORE: BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.: **FILED SEPTEMBER 14, 2018**

Tyrone Charles Brantley appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his conviction for sexual assault, 18 Pa.C.S.A. § 3124.1, and related offenses.[1] After careful review, we affirm.

On October 11, 2015, Brantley and the victim were together at their shared residence. That evening, the victim performed oral sex on Brantley. Brantley, displeased with the manner in which she performed oral sex on him, demanded she repeat the act again. Brantley remained displeased with the victim following her second performance of oral sex on him. In retaliation, he took a bottle of urine, which he had collected previously, and poured it on the

_____

[1] Terroristic threats, 18 Pa.C.S.A. § 2706; unlawful restraint serious bodily injury, 18 Pa.C.S.A. § 2902; simple assault, 18 Pa.C.S.A. § 2701; and recklessly endangering another person ("REAP") 18 Pa.C.S.A. § 2705.

victim's person. The victim, who did not consent to this act, showered and went to bed.

The next morning, Brantley and the victim conversed about the previous evening, during which he restated that he was displeased with her performance of oral sex. Brantley then verbally intimidated the victim into removing all of her clothing and commanded her to punch herself in the face. Brantley was holding a leather belt and threatened to hit her if she did not comply. Brantley used his cell phone to record the victim hitting herself in the face, mouth and nose. After the victim struck herself multiple times, Brantley commanded her to perform oral sex on him. Eventually, Brantley engaged in vaginal intercourse with the victim.

Following the vaginal intercourse, Brantley relented and allowed the victim to put her on clothes. The victim, unbeknownst to Brantley, photographed her injuries with her cellphone and sent them to her mother, her best friend, and Brantley's mother, along with a text message that read, "This is what I had to do to myself." The same day, the victim's brother informed police that Brantley had harmed the victim, and the police arrested him that evening.

Following Brantley's arrest, Police Officer Jeremy Zuber interviewed the victim. The victim informed Officer Zuber of Brantley's sexual assault, which occurred both the previous evening and that morning. The same day, the victim consented to being photographed by a sex assault nurse and was administered a rape kit.

On July 18, 2016, Brantley's nonjury trial commenced. At trial, Officer Zuber testified as follows:

> OFFICER ZUBER: [The victim] stated that the previous night . . . [Brantley] had wanted sexual favors. [The victim] started performing them. [Brantley] had told her that she was doing it bad and wrong. So [the victim] stopped. [Brantley] had become upset, and he poured a pop bottle that was full of urine on top of her. [The victim] said they both went to bed. [The victim] woke up early the next day . . . and she said she had to get ready for work.
>
> . . .
>
> During the course of [the victim] trying to get ready[,] [Brantley] had taken her cell phone. [Brantley] told her to get undressed, that he wanted to continue again with sexual acts. [The victim] said that she obeyed [] because she was afraid of him. During the course of that [Brantley and the victim] stopped again, and he had made her beat herself, punch herself in the face, while he stood there and watched with a brown leather belt and said she was doing it wrong, assaulting herself, and if she didn't hit herself harder he would do it for her.

N.T. Trial, 6/18/16, at 41-42.

On July 20, 2016, following a three-day nonjury trial, the trial court found Brantley not guilty of rape and guilty of the remaining charges. The trial court sentenced Brantley to an aggregate term of three to six years' imprisonment followed by three years' probation. On December 29, 2016, Brantley filed a timely post-sentence motion, which the trial court denied on April 18, 2017. On May 5, 2017, Brantley filed a timely notice of appeal. Both Brantley and the trial court have complied with Pa.R.A.P. 1925. On appeal, Brantley raises the following issues for our review:

1. Did the [t]rial [c]ourt err when it found that the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that [] Brantley committed the crime of [s]exual [a]ssault where the Commonwealth's evidence was so contradictory to render any guilty verdict pure conjecture.

2. Whether the [t]rial [c]ourt abused its discretion in not granting [] Brantley a new trial when the verdict of guilty for [s]exual [a]ssault was against the weight of the evidence when the Commonwealth relied on the complainant's testimony at a preliminary hearing despite her trial testimony and numerous other statements to responding emergency personnel to the contrary?

3. Did the [t]rial [c]ourt abuse its discretion by admitting hearsay testimony through Officer Jeremy Zuber of prior inconsistent statements made by [a Commonwealth Witness], who had not yet testified?

Brief of Appellant, at 6.

Brantley first challenges the sufficiency of the evidence as it relates to his conviction for sexual assault. Specifically, Brantley argues that the victim consented to the sexual acts.

"Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Ballard***, 80 A.3d 380, 390 (Pa. 2013) (citation omitted). Specifically, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt. ***See Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means

of wholly circumstantial evidence." ***Commonwealth v. Brown***, 23 A.3d 544, 559 (Pa. Super. 2011) (en banc) (quoting ***Commonwealth v. Hutchinson***, 947 A.2d 800, 805–06 (Pa. Super. 2008)).

Furthermore, "[a]s an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." ***Commonwealth v. Kinney***, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007) (quoting ***Commonwealth v. Frisbie***, 889 A.2d 1271, 1274–75 (Pa. Super. 2005)).

Section 3124.1 of the Crimes Code defines sexual assault as follows:

### § 3124.1. Sexual assault

Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S.A. § 3124.1.

"[T]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." ***Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa. Super. 2006) (quoting ***Commonwealth v. Davis***, 650 A.2d 452, 455 (Pa. Super. 1994)).

Here, the Commonwealth established that the victim only acquiesced to Brantley's demand for oral and vaginal sex because she feared further physical abuse and humiliation if she refused to do so. Brantley threatened to beat the victim with a belt and intimidated her into physically abusing herself; the victim reasonably believed failing to comply with Brantley's request for oral and vaginal sex would result in further harm. Therefore, we find Brantley's sufficiency issue merits no relief. *See* Trial Court Opinion, 2/20/18, at 13-14.

Brantley next avers that the guilty verdict for sexual assault was against the weight of the evidence because: (1) the victim's testimony was incredible; (2) prior to trial, the victim sent letters to the District Attorney's Office claiming she was *not* sexually assaulted; and (3) his conviction shocks one's sense of justice.

An appellate court reviews the denial of a motion for a new trial based on a claim the verdict is against the weight of the evidence for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id.* at 1055 (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)).

A trial court should not grant a new trial "because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* Rather, to grant a new trial, the trial court must

- 6 -

"determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Id.*** (quoting ***Widmer***, 744 A.2d at 752). Stated differently, a trial court should not award a new trial unless "the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Id.*** (quoting ***Widmer***, 744 A.2d at 752).

The trial court aptly stated as follows:

> [Brantley's] claim that the verdict was against the weight of the evidence concedes there was sufficient evidence to support the trial court's verdict. . . . Here, the victim's written, signed and adopted statement to Officer Thomas, as well as her testimony under oath at the preliminary hearing, was credible and convincing as to [her] non-consent to the sexual acts. This [weight] claim is meritless. The verdict does not shock one's sense of justice.

Trial Court Opinion, 2/20/18, at 16. Upon review of the record, we do not find that the trial court abused its discretion in finding that Brantley's weight claim is meritless. ***Clay***, ***supra***.

Last, Brantley claims the trial court abused its discretion in allowing the Commonwealth to present evidence of the victim's prior consistent statements.

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Schoff*, 911 A.2d 147, 154 (Pa. Super. 2006) (quoting

*Commonwealth v. Levanduski*, 907 A.2d 3, 13-14 (Pa. Super. 2006) (en

banc)). Furthermore,

the trial court in a non-jury trial has the authority to control the order and presentation of evidence. [Pa.R.E.] 611 provides that [] "the court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence" for three purposes:

(1) make those procedures effective for determining the truth;

(2) avoid wasting time; and

(3) protect witnesses from harassment or undue embarrassment.

Pa.R.E. 611(a).

In addition, Pennsylvania's evidentiary rules specify that trial courts make preliminary and, in due course, final decisions about the admissibility of evidence. Pa.R.E. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege."). *See also Commonwealth v. Alicia*, [] 92 A.3d 753, 760 (Pa. 2014) ("The admissibility of evidence is within the sound discretion of the trial court[.]"). By providing that the trial court is not bound by evidentiary rules in determining the admissibility of evidence, except those regarding privilege, Rule 104(a) recognizes that the judge "should be empowered to hear any relevant evidence to resolve questions of admissibility." Pa.R.E. 104 cmt.

- 8 -

*Commonwealth v. Safka*, 141 A.3d 1239, 1249 (Pa. Super. 2016).

Judge Ignelzi presided over a bench trial, and, thus, acted as both the fact-finder and gatekeeper, ruling on the admissibility of evidence. "It is of the essence of the judicial function to hear or view proffered evidence, whether testimonial or in exhibit form, and to decide whether or not it should be admitted into evidence, or if admitted initially or provisionally, should later be excluded or disregarded." *Commonwealth v. Dent*, 837 A.2d 571, 582 (Pa. Super. 2003) (citation omitted). In other words, in a nonjury trial, the fact-finder "is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." *Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa. Super. 2017) (citation omitted); *see also Commonwealth v. Lambert*, 765 A.2d 306, 362 (Pa. Super. 2000) ("[W]here a criminal case proceeds before a judge sitting without a jury, there is a presumption that his knowledge, experience and training will enable him to disregard inadmissible evidence and other improper elements.").

At trial, the Commonwealth sought to introduce testimony from Officer Zuber regarding the victim's statement about Brantley's abuse. In ruling that Officer Zuber's testimony was admissible, the trial court determined that his statement was admissible under Rule 613(c), which states as follows:

> **(c)    Witness's    Prior    Consistent    Statement    to Rehabilitate**. *Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness* about the statement and the statement is offered to rebut an express or implied charge of:

(1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or

(2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c) (emphasis added).

Furthermore, "[i]n cases involving sexual assault, Rule 613 authorizes the Commonwealth to present evidence in its case-in-chief of a prompt complaint by the victim 'because [the] alleged victim's testimony is automatically vulnerable to attack by the defendant as recent fabrication in the absence of evidence of hue and cry on her part.'" **Commonwealth v. Bryson**, 860 A2d 1101, 1104 (Pa. Super. 2004). "Evidence of a complaint of sexual assault [(e.g., victim statement to police)] is 'competent evidence, properly admitted when limited to establish that a complaint was made and also to identify the occurrence complained of with the offense charged.'" **Id.** Additionally, it is axiomatic that in a rape case, the credibility of the complaining witness is always at issue. **Id.**, citing **Commonwealth v. Freeman**, 441 A.2d 1327, 1331 (Pa. Super. 1982).

The Commonwealth sought to introduce Officer Zuber's testimonial account of the victim's post-assault statement because it became apparent that she would recant her previous statement that Brantley had sexually

assaulted her.[2]  However, the Commonwealth, anticipating that the victim would recant her previous incriminating testimony and/or testify falsely, proffered Officer Zuber's testimony *prior* to the victim's testimony.  Initially, we note, it was inappropriate for the trial court to allow the Commonwealth to examine preemptively Officer Zuber regarding the victim's prior statement about Brantley's sexual abuse.

Nevertheless, we find the instant circumstances comparable to those in **Bryson**.  There, defendant raped the victim, A.M.; the next day, A.M. confided to a friend, A.W., that defendant had raped her.  At trial, the Commonwealth proffered the testimony of A.W. before A.M. testified, but the trial court allowed A.W.'s testimony under the "prompt complaint" exception pursuant to Rule 613(C).  This Court, in deciding **Bryson**, acknowledged that A.W. testified "out of order, meaning, before A.M. testified," **Bryson**, 860 A2d at 1104, and thus, it was not technically a prior consistent statement used for rehabilitation.  However, because the credibility of the victim is always at issue in a rape case, **Bryson**, **supra**, this Court determined that A.W.'s out-of-order

---

[2] On November 11, 2016, the victim wrote a letter to the Allegheny County District Attorney's Office Domestic Violence Unit recanting her statement to Officer Zuber that Brantley had sexually assaulted and raped her and requesting that the District Attorney drop all charges against Brantley.  **See** Victim Letter 1 (Exhibit C), 11/6/15.  The same day, the victim sent the same letter to the Allegheny County Public Defender's Office.  **See** Victim Letter 2 (Exhibit D), 11/6/15.  The record also indicates that on November 2, 2015, prior to sending these two letters, the victim also sent a letter to the Magisterial District Court Judge requesting the Magistrate Judge drop the charges of terroristic threats, rape and sexual assault.  In light of the victim's recantation of her previous testimony, the Commonwealth anticipated that the victim would testify inconsistently at trial.

testimony regarding A.M.'s "prompt complaint" was harmless, and, thus, the trial court did not abuse its discretion in permitting the testimony.

As previously mentioned, Officer Zuber testified that the victim made a prompt complaint of Brantley's sexual assault to police. The manner in which the Commonwealth presented Officer Zuber's testimony was, like in **Bryson**, out-of-order. The trial court, in its Rule 1925(a) opinion, aptly addressed Officer Zuber's testimony, stating that

> [t]he victim told Officer Zuber she obeyed [Brantley's] request because she was afraid of him. While this was occurring, [Brantley] made the victim punch herself in the face while threatening her with a leather belt. Since this was a [n]on-[j]ury trial, the [trial court] had no hesitation in allowing Officer Zuber to testify to the victim's statement although the victim had not testified at that point in the trial. In light of the victim's eventual trial testimony, unequivocally the testimony of Officer Zuber constitutes a prior consistent statement to rehabilitate pursuant to Pa.R.[E.] 613(c). Officer Zuber's testimony was consistent with the victim's original written statement[.] . . . A fair reading of that statement allows the inference to be drawn the threatening conduct by [Brantley] occurred at or near the sexual acts in question.

Trial Court Opinion, 2/20/18, at 16-19. Similar to **Bryson**, we do not find that the trial court's decision to allow Officer Zuber to testify prejudiced Brantley's defense, and therefore the trial court's error was harmless. The trial court afforded Brantley an opportunity to cross-examine the victim, and the trial court assured him that it would strike Officer Zuber's testimony from the record if the victim did not testify. **See** Pa.R.E. 613(c); **see** N.T. Trial, 6/18-20/18, at 40 ("[The Commonwealth] is permitted to introduce the [prior consistent] statement if you cross-examine the victim[.] . . . If she doesn't

- 12 -

take the stand the [c]ourt will strike the statements[.]"). Furthermore, we presume that the trial court, acting as the gatekeeper of evidence, dispassionately applied the law when determining whether Officer Zuber's statements were admissible, ignored any prejudicial statements, and disregarded any inadmissible evidence. **McFadden**, **supra**. Therefore, Brantley's final claim on appeal is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/2018